IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TONY WADE GOLDEN                                                    PLAINTIFF

v.                          Civil No. 14-2003

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                     DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Tony Golden, brings this action under 42 U.S.C. § 405(g), seeking judicial

review of a decision of the Commissioner of Social Security Administration (Commissioner)

denying his claim for a period of disability and disability insurance benefits ("DIB") under Title

II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

In this judicial review, the court must determine whether there is substantial evidence in the

administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

I.     **Procedural Background:**

The Plaintiff filed his application for DIB on November 18, 2011, alleging an onset date

of January 1, 2010, due to diabetes, carpal tunnel syndrome ("CTS"), bad knees, high blood

pressure, neuropathy, shoulder and knee pain, and a dislocated hip.  Tr. 80-81, 103, 128-129,

141, 146, 169.  His claims were denied both initially and upon reconsideration.  Tr. 42-43.  An

administrative hearing was then held on August 15, 2012.  Tr. 26-41.  Plaintiff was present, but

opted to proceed without representation.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

A the time of the administrative hearing, Plaintiff was 50 years old and possessed a high school education or its equivalent.  Tr. 21, 31.  He had past relevant work ("PRW") as a cabinetmaker, pizza baker, and pizza deliverer.  Tr. 21, 34-36, 109-127.

On September 27, 2012, the Administrative Law Judge ("ALJ") concluded that, although severe, Plaintiff's hypertension, insulin dependent diabetes mellitus, and peripheral neuropathy did not meet or equal any Appendix 1 listing.  Tr. 16-17.  The ALJ determined that Plaintiff maintained the residual functional capacity ("RFC") to perform light work "except the claimant is limited to jobs involving only occasional bending, stooping, and climbing.  Tr. 17.  With the assistance of a vocational expert, the ALJ concluded Plaintiff could perform work as a toy assembler, conveyor line bakery worker, small products assembler, and fast food worker.  Tr. 22.

On October 30, 2014, the Appeals Council denied Plaintiff's request for review. Tr. 1-6.  Subsequently, Plaintiff filed this action.  ECF No. 1-4.  This case is before the undersigned by by consent of the parties.  Both parties have filed appeal briefs, and the case is now ready for decision.  ECF No. 10, 11.

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary

## II.  <u>Applicable Law</u>:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining

2

the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A.   The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal

AO72A
(Rev. 8/82)

an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)-(f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.   <u>Discussion</u>:

The undersigned is concerned by the ALJ's RFC determination in this case.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the

4

workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

On January 11, 2012, Plaintiff underwent a general physical exam with Dr. Chester Carlson. Tr. 209-213. The examination revealed positive Tinel and Phalen signs in the left hand, a slight limp to his gait, painful squatting and arising from a squatting position, and 25% decreased grip strength in the left hand. Dr. Carlson diagnosed Plaintiff with mild osteoarthritis of the left knee, diabetes, hypertension, and probable left hand carpal tunnel syndrome. He then opined that Plaintiff would be moderately limited with regard to his ability to bend, squat, reach or work for long periods of time due to hip, knee, and shoulder pain. Dr. Carlson also noted moderate limitations regarding the grip strength in Plaintiff's left hand secondary to undiagnosed carpal tunnel syndrome. Tr. 209-213. He did not, however, define the term moderate. And, the ALJ failed to include any handling limitations in his RFC.

The Commissioner argues that no reversible error was committed because at least one of the positions identified by the ALJ, the conveyor line bakery worker position, requires only occasional reaching and handling and no fingering or feeling. While the Dictionary of Occupational Titles ("DOT") supports this assertion, it also indicates that the position requires: inspecting cakes for defects as they move along the conveyor, removing defective cakes from the conveyor to rejection bins, positioning cakes on the conveyor for application of filling or icing by machine, placing additional cake layers on coated layers, smoothing the edges of the cake, and moving a decorating tool over the top of designated cakes to apply a specified appearance, all requiring that the worker handle the cakes. *See* DICTIONARY OF OCCUPATIONAL TITLES § 524.687-022, www.westlaw.com (last accessed August 13, 2014). Given that Dr.

Carlson failed to provide a clear explanation of Plaintiff's limitations and the ALJ included no handling limitations in the hypothetical questions posed to the vocational expert, the undersigned finds that remand is necessary to allow the ALJ to clarify Plaintiff's handling limitations with Dr. Carlson.  Further, whether he finds those limitations to be severe or non-severe, they must be included in a hypothetical question posed to the vocational expert to determine whether jobs exist in the national economy that Plaintiff remains capable of performing.   20 C.F.R. § 404.1545(a)(2).  Any deviations from the DOT should be explained by the expert on the record. *Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 979 (8th Cir. 2003).

The ALJ also concluded that Plaintiff's diabetic neuropathy was not severe.  The Commissioner contends that this is proper because Plaintiff's diabetes appeared to be fairly well controlled during the relevant time period.  However, by definition, diabetic neuropathy is a type of "nerve damage" that occurs when high blood sugar levels injure nerve fibers throughout the body, particularly in the legs and feet, for which there is no known cure.  Mayo Foundation for Medical Education and Research, *Diabetic Neuropathy*, http://www.mayoclinic.org/diseases-conditions/diabetic-neuropathy/basics/definition/con-20033336 (last accessed August 13, 2014). Therefore, while neuropathy can be prevented and its progression slowed by controlling blood sugar levels, this does not necessarily reverse existing damage.  Accordingly, on remand, the ALJ is also directed to reconsider Plaintiff's severe impairments.  He should also recontact Dr. Carlson to clarify what is meant by moderate limitations with regard to bending, squatting, reaching, and working for long periods of time, as this could include limitations affecting Plaintiff's ability to stand and walk.

**V.**     **Conclusion**:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 14th day of August 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

7